# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRUMILLA FOREMAN, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil No. PJM 05-3342 |
| | * |
| ALLEN WEINSTEIN, ARCHIVIST, | * |
| NATIONAL ARCHIVES AND | * |
| RECORDS ADMINISTRATION, *et. al.*, | * |
| | * |
| Defendants. | * |

## **OPINION**

Plaintiff Trumilla Foreman has filed a *pro se* Complaint against her former employer, Allen Weinstein, Archivist of the National Archives and Records Administration (NARA), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-e17 (2004) ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634 (2004). She alleges failure to promote based on gender and age.[1] The matter is before the Court on

---

[1] Foreman's claims of discrimination based on race, and physical and mental disability, were withdrawn during the administrative proceedings before the Equal Employment Opportunity Commission (EEOC) and thus are not considered by the Court. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."). While Foreman disputes waiving her claim of racial discrimination, the claim is essentially moot if the if the person promoted is of the same race as the plaintiff. *See* discussion *infra* Part IV. NARA filled the position Foreman sought with James Springs who, like Foreman, is African American.

Weinstein's Motion to Dismiss or, in the Alternative, for Summary Judgment.[2] Since Weinstein has cited evidence outside the four corners of the Complaint, his Motion will be treated as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(b). No hearing is necessary to dispose of this matter. *See* Local R. 105.6 (D. Md. 1999). For the following reasons, the Court GRANTS Defendant's Motion for Summary Judgment.[3]

I.

Foreman alleges that NARA discriminated against her based on her age and gender when it supposedly failed to advance her application to become an Auditor at a level GS-511-13.[4]

The relevant facts are these:

Foreman was an Auditor, GS-511-12, in the Office of the Inspector General (OIG) of NARA from 1986 until 1997. In September 1997, NARA posted two vacancy announcements for one and the same GS-13 Auditor position. The first announcement, N97-31, involved a possible merit promotion and only career or career conditional employees could apply. The second announcement, N97-31B, was a competitive procedure open to the public. Both announcements required applicants to submit an application form, written answers to four KSAOs (knowledge,

---

[2] Weinstein filed his Motion to Dismiss or, in the Alternative, for Summary Judgment to which Foreman has filed a Response. Weinstein has not filed a Reply. Accordingly, the Court decides the Motion on the papers before it.

[3] Defendant's Motion to Dismiss is therefore MOOT.

[4] The General Schedule (GS) is a list of basic annual salaries applicable to certain government employment positions, which increase consecutively from GS-1 to GS-13. *See* 5 U.S.C. 5332. "511" is a code designating an Auditor position. *See, e.g., Nater v. Riley*, 114 F. Supp. 2d 17, 21 (D.P.R. 2000).

skills, abilities and other characteristics questions), and other supporting documentation.  Foreman submitted applications under both announcements.

David Grabowski, a GS-13 Auditor in the Audit Unit of the OIG of NARA, who appears to have supervised Foreman prior to her candidacy,[5] reviewed all applications submitted pursuant to both announcements.  With respect to the first announcement, the merit promotion, Grabowski evaluated the candidates' written answers to the four KSAOs and assigned each answer a score of 1 through 4, with 4 being the highest.  He then put the scores onto a Candidate Ranking Worksheet (CRW) and sent the CRW to Denise Green, the personal staffing specialist responsible for filling the position.  Green then ordered the twenty-seven applicants on the CRW by score.  Any candidate who attained one of the top two scores was noted as Best Qualified and referred to the selecting official.[6]  Five of the twenty-seven candidates were ranked Best Qualified.  Of these five, three were males and two were females, one was over forty years of age while four were under forty years of age.  Foreman received a total score below the top two scores and accordingly received no further consideration under the merit promotion announcement.  Green then submitted her list to the selecting official.

---

[5]

The nature of Foreman and Grabowski's working relationship is not entirely clear from the record.  However, Foreman has submitted a copy of what appears to be her attorney's typed notes from the fact-finding conference before the EEOC Administrative Law Judge.  According to the notes, "Witness, David Grabowski (SME) acted as a Team Leader and supervised most of the work products of applicant, Trumilla Foreman, immediately before and in the past" and "The SME also worked in the capacity of supervisor for Ms. Foreman many times."

[6]

While NARA's brief does not name the selecting official, the Court infers from its exhibits that Robert L. Taylor, Assistant Inspector General for Auditing, was that official.

With respect to the public announcement, thirty-four applications were evaluated by Grabowski in the same manner as the merit promotion. When she received the scores from Grabowski, Green organized this list of candidates, adding any applicable Veteran's Preference points to the total scores before submitting the top three scores to the selecting official. Grabowski and Green ranked Foreman's total score twelfth-best among the thirty-four, a score shared by six other candidates. Of the top three candidates ultimately referred by Green to the selecting official, two were male, one was female, and all were over the age of forty.

In addition to the five Best Qualified candidates under the merit promotion and the top three candidates under the public competition, a list of eighteen already active GS-13 employees eligible for lateral reassignment was given to the selection official. This list consisted of thirteen males and five females, of whom fifteen were over the age of forty and three were under the age of forty. The Auditor GS-511-13 position was ultimately filled by James Springs, a thirty-six year-old male, who was on the lateral list. Springs had worked as an GS-511-13 Auditor for five years with the Government Printing Office.

II.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in her favor, such inferences must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part

of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted). Trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where the plaintiff fails to meet this burden, the defendant should not be required to undergo "the considerable expense of preparing for and participating in a trial." *Hayes v. Hambruch*, 841 F. Supp. 706, 709 (D. Md. 1994) (Harvey, J.), *aff'd,* 64 F.3d 657 (4th Cir. 1995).

Even though intent is important in employment discrimination cases, the statutory purpose of summary judgment applies in no lesser degree to these types of cases than to commercial or other areas of litigation. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."). In the employment discrimination context, a subjective, even if genuine, belief of discrimination will not shield a non-moving plaintiff from a grant of summary judgment. *See Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988).

III.

To prove disparate treatment under Title VII, the plaintiff has the burden of establishing discriminatory intent. This can be met either by presenting direct evidence of discriminatory animus, or through the indirect burden-shifting proof scheme set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Since Foreman has offered no direct evidence of discriminatory animus, this case is properly analyzed under the three-part *McDonnell Douglas* framework.

Under *McDonnell Douglas*, to create an inference of discrimination, the plaintiff must first establish a *prima facie* case of discrimination.  *Id*.  The central focus of the inquiry is whether the employer has treated "some people less favorably than others because of their race, color, religion, sex or national origin."  *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, which the employer may rebut by articulating a legitimate non-discriminatory reason for its employment decision.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  The employer's burden is merely one of production, not persuasion.  *Id*. at 255-56.  If the employer meets this burden, the presumption raised by the plaintiff's *prima facie* case is rebutted and the factual inquiry proceeds to a "new level of specificity."  *Id*. at 255.

At that juncture, the plaintiff would have to prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination."  *Id*. at 253; *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989).  The ultimate burden of showing that the employer intentionally discriminated against her remains at all times with the plaintiff.  *Burdine*, 450 U.S. at 253.  Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if "no rational factfinder could conclude that the action was discriminatory."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also Gillins v. Berkeley Elec. Coop., Inc.*, 148 F.3d 413,

416-17 (4th Cir. 1998) (explaining that the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action).

IV.

Foreman claims that she suffered an adverse employment action as a result of discrimination based on her gender and age. The Court disagrees. She has failed to establish a *prima facie* case that NARA's decision not to promote her was motivated by discrimination. Even assuming that Foreman could establish a *prima facie* case of discrimination, NARA has articulated a legitimate non-discriminatory reason for its employment decision, which Foreman has not produced evidence to prove that the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination.

A.

To analyze a claim of failure to promote due to gender and age discrimination under the *McDonnell Douglas* framework, Foreman must show that (1) she is a member of a protected group; (2) there was an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996). Foreman satisfies the first two factors and the Court assumes *arguendo* that she satisfies the third.[7] The issue is whether she was rejected under circumstances giving rise to an inference of unlawful discrimination.

---

[7]
```
     In a case such as this, where the ultimate issue is whether
someone else was better qualified than the plaintiff, the third
factor to some extent merges into the fourth.
```

It is undisputed that the applicant ultimately selected, James Springs, was a thirty-six year-old male. It is also true that the fact that the person hired for the position was outside a complainant's protected classes of age and gender has been deemed sufficient to satisfy the fourth prong under the *McDonnell Douglas* calculus. *See, e.g., Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). But the applicability of this rule to the present factual scenario is problematic, given that Foreman's allegations of discrimination are directed at Grabowski and Grabowski did not select Springs.[8]

The Fourth Circuit, it should be noted, has stated that "the McDonnell Douglas framework should not be applied in a 'rigid, mechanized, or ritualistic' manner. Rather, the test is 'merely a means to fine-tune the presentation of proof and, more importantly, to sharpen the focus on the ultimate question -- whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against her.'" *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 611 (4th Cir. 1999) (quoting *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995)). In the Court's view, to allow Foreman to base a *prima facie* case solely on the fact that Springs was male and under forty years-old would be to apply precedent mechanistically. Since Foreman has alleged that it was Grabowski, not Green, and not the selecting official who discriminated against her, the proper focus of the Court's inquiry should not be on Springs's selection but on Grabowski's decision to score other applicants higher than Foreman, so that they and not she were referred through Greento the selecting official. In other words, the focus must be upon the age and gender

---

[8] It may be that Grabowski never even saw Springs's application, since Springs was one of eighteen GS-13 employees eligible for lateral reassignment, and the record does not indicate whether Grabowski reviewed any of the KSAOs from these applicants.

of the applicants advanced by Grabowski, not on the age and gender of the person the selecting official ultimately hired. *C.f. Swift v. Montgomery County Pub. Schs.*, 2001 U.S. Dist. LEXIS 7551 (D. Md. 2001) (Fact that individual was rejected for position in favor of person outside her protected category was insufficient to meet fourth prong of *prima facie* case where discrimination was claimed when individual was not invited to interview. Individual failed to show that employees eligible for interviews, who were outside of her protected category, were granted more interviews than she.).

In this case, of the twenty-seven applicants for the merit promotion evaluated by Grabowski, the five scored as Best Qualified and referred to management consisted of three males and two females, one of whom was over forty years of age. Of the thirty-four applicants evaluated under the public announcement, three were referred to management: two males, one female, and all over the age of forty. Thus, of the eight applicants who Grabowski scored high enough to advance to the next level of the hiring process, half were over the age of forty and nearly half were female. As a result, Grabowski's decision to advance so many applicants within Foreman's protected classes seriously undermines any argument that she was rejected under circumstances giving rise to an inference of unlawful discrimination. The Court declines to make such an inference and concludes that Foreman has not established a *prima facie* case of discrimination.

B.

Even assuming for the sake of argument that Foreman could establish a *prima facie* case of discrimination, NARA has provided a legitimate, non-discriminatory reason for its decision not to promote her: She was less qualified than the other candidates.

It is well settled that an employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Dep't of Cmty. Affairs*

*v. Burdine*, 450 U.S. 248, 259 (1981).  Further, "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."  *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 960 (4th Cir. 1996).  As evidence of Foreman's less impressive qualifications, NARA offers testimony that Grabowski gave at the hearing before the EEOC that Foreman's answers to the application questions were brief and weak in content compared to other applicants.  Grabowski also noted that Foreman lacked the advanced degrees and professional certifications such as a CPA or CIA (Certified Internal Auditor) possessed by other applicants.  Moreover, Grabowski stated that, unlike many other applicants, Foreman did not include any appraisals in support of her application.

Finally, the candidate selected for the position, James Springs--unlike Foreman -- had six years' experience working as a GS-511-13 Auditor.  "Experience in the industry . . . constitutes a qualitatively different criterion upon which to base an employee's selection."  *Brinkley v. Harbour Rec. Club,* 180 F.3d 598, 611 (4th Cir. 1999).  In the Court's view, Springs's experience alone would suffice for NARA to carry its burden of producing a legitimate non-discriminatory reason for choosing not to promote Foreman.

V.

If Foreman can produce evidence that the reason offered by NARA for its employment decision was a pretext for discrimination, she could still defeat NARA's Motion for Summary Judgment.  This she could do by showing that NARA's reason is "'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of" discrimination.  *See, e.g., EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 409 n.12 (4th Cir. 2005); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

Foreman attempts to demonstrate pretext by pointing out certain irregularities in the handling of her application. She alleges -- and the Court acknowledges that there is some slight suggestion of -- a possible conflict of interest between her and Grabowski. The internal requirements of the hiring process mandated that a panel be established to review the applications, and that the panel members be impartial and only consider the written record. Grabowski, who again appears to have supervised Foreman prior to reviewing her application, has admitted that he and Foreman "had problems when she worked in the office." While the nature, cause, and extent of those problems are not expanded upon in the record, Grabowski, according to Foreman, could not have been an impartial judge of her application.

Indeed, says Foreman, Grabowski's bias is evidenced by the irregular way in which he handled her application. Unlike the other candidates' KSAO scores, he did not at first write down her scores on the Candidate Ranking Worksheet. Instead, Green, the personal staffing specialist reviewing Grabowski's evaluations, had to contact Grabowski to ascertain Foreman's scores. Grabowski explained that he had overlooked writing down Foreman's scores because he reviewed her application first and did not want to judge it with too harsh or too lenient an eye. He did, however, promptly submit her scores pursuant to Green's request.

While these facts arguably cast some doubt upon the purity of Grabowski's handling of Foreman's application, in no sense do they demonstrate that NARA's legitimate, non-discriminatory reasons for Foreman's non-selection are "unworthy of credence" nor do they amount to "circumstantial evidence sufficiently probative of" discrimination. An employer remains entitled to judgment as a matter of law "if the plaintiff [has] created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and

uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). That is precisely the situation that obtains here.

Alternatively, a plaintiff can rebut the employer's proffered legitimate non-discriminatory reason for her non-promotion by showing that she was better qualified than the person selected for the position. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 188 (1989). But Foreman has offered no evidence that her qualifications were better than, indeed were even equivalent to, those of the other candidates who advanced to the final selection stage -- e.g., that she possessed an advanced degree. She provides nothing more than her own bald assertion that Grabowski's "problems" with her and the irregular treatment of her application by him stemmed from discriminatory animus. This does not suffice. Mere allegations or opinions offered by a complainant are insufficient to show pretext and defeat summary judgment. *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988). The Court would remind, as often it must, that Title VII is not a vehicle to explore all claims of unfair treatment by an employee or job applicant. *See, e.g.*, *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994) (quoting *Holder v. Raleigh*, 867 F.2d 823 (4th Cir. 1989)) ("We do not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision."). To proceed under Title VII, there must be at least a *prima facie* showing of <u>illegal</u> discrimination, e.g. discrimination based on gender or age. That sort of discrimination has not been shown in the present case.

VI.

For all these reasons, NARA's Motion for Summary Judgment will be GRANTED.

A separate Order will ISSUE.

                                             /s/
                              PETER J. MESSITTE
March 27, 2007             UNITED STATES DISTRICT JUDGE